IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| NIDIA DELCARMEN JUAREZ DE LA ROSA, § § § § Petitioner, § v. § § ANGEL SANTIAGO ALONSO, § § Respondent. | CIVIL ACTION NO. 4:24-CV-00059-AGD |

## MEMORANDUM OPINION AND ORDER

Pending before the court is Petitioner Nidia DelCarmen Juarez De La Rosa's Amended Verified Petition for Return of Child to Petitioner and Petition for Immediate Issuance of Show Cause Order to Respondent (Dkt. #19). On July 19, 2024, the court completed a hearing regarding the Petition (Dkt. #60). At the hearing, both Petitioner and Respondent Angel Santiago Alonso had full opportunity to present arguments, testimony, and evidence in support of their respective positions. At the conclusion of the hearing, the court orally announced its ruling, finding that the Amended Petition (Dkt. #19) was **DENIED** and advising that a written decision would be forthcoming.

## FINDINGS OF FACT

Petitioner is the mother of A.Y.S.J., a fifteen-year-old child.[1] Respondent is A.Y.S.J.'s father. A.Y.S.J. was born in 2009 in Apodaca, Nuevo Leon, Mexico. Petitioner and Respondent were never married, nor did they ever reside together. In 2010, a DNA test was conducted, which confirmed that Respondent is A.Y.S.J.'s father. A.Y.S.J.'s last name was subsequently changed to Respondent's last name and Respondent's name was added to A.Y.S.J.'s birth certificate. At some

---

[1] At the time of the hearing, A.Y.S.J. was fourteen years old.

point after A.Y.S.J.'s birth, Respondent moved from Mexico to Dallas, Texas. A.Y.S.J. remained in Mexico with Petitioner.

When A.Y.S.J. lived in Mexico, he lived in a three-bedroom house with Petitioner, his stepfather, and his stepsiblings and regularly attended school. Since living in Texas, A.Y.S.J. attends middle school and church, and enjoys sports and playing the violin. He lives in an apartment with Respondent and his paternal grandparents. A.Y.S.J. has aunts, uncles, and cousins nearby with whom he enjoys spending time.

Between 2017 and 2022, when he lived in Mexico, A.Y.S.J. occasionally traveled to Dallas, Texas to spend time with Respondent, usually during summer or holiday breaks. Accordingly, on July 15, 2022, A.Y.S.J. traveled to Dallas, Texas. Petitioner agreed to allow A.Y.S.J. to visit for a vacation and to receive medical care but did not intend to allow A.Y.S.J. to move to Texas. Even so, the Parties exchanged multiple texts negotiating A.Y.S.J.'s travel dates. After failing to agree on a return date, Petitioner informed Respondent that she would come to Texas to retrieve A.Y.S.J. if Respondent would not return him as originally planned.

On January 21, 2023, because Respondent had not returned A.Y.S.J., Petitioner traveled to Dallas, Texas and arrived at Respondent's residence in the early morning hours on January 22, 2023. Respondent did not open the door or otherwise respond to Petitioner until later that morning. Petitioner then requested that Respondent and A.Y.S.J. meet her at the police station. In response, Respondent directed Petitioner to speak with his attorney regarding further communications. Petitioner then traveled to the Mexican Consulate in Dallas to initiate an initial complaint. Petitioner returned to Mexico, and on February 3, 2023, filled out forms pursuant to the Hague Convention at the Central Authority of Mexico in Monterrey, Mexico.

On January 9, 2023, Respondent submitted an I-539 Application to Extend/Change Nonimmigrant Status on behalf of A.Y.S.J. (the "Application"). The Application reflects that A.Y.S.J. entered the United states on July 15, 2022, and was authorized to remain until January 14, 2023. In the Application, Respondent requested an extension of A.Y.S.J.'s stay until January 14, 2024. On September 6, 2023, the United States Citizenship and Immigration Services issued a Decision denying the Application because A.Y.S.J. failed to appear for a biometric services appointment on February 17, 2023.

On January 17, 2023, Respondent filed an Original Petition in Suit Affecting the Parent-Child Relationship in the 417th District Court in Collin, County, Texas "requesting sole managing conservatorship of the child." On June 15, 2023, the Collin County court stayed the case until resolution of the Hague Convention matter. On January 23, 2024, Petitioner filed her Verified Petition for Return of Child to Petitioner and Petition for Immediate Issuance of Show Cause Order to Respondent (Dkt. #1). Against this backdrop, the court now turns to its analysis under the Hague Convention, (the "Convention") and the International Child Abduction Remedies Act, 22 U.S.C. § 9001, *et. seq.* ("ICARA").

## CONCLUSIONS OF LAW

*General Principles*

Petitioner brought this action for the return of A.Y.S.J. under the provisions set forth in the Convention and ICARA, which entitle a person whose child has been wrongfully removed to, or wrongfully retained in, the United States, to petition a federal court to order the child returned. More specifically, the Convention governs civil proceedings filed in signatory countries for the recovery of abducted children. *Hague Convention on the Civil Aspects of International Child Abduction*, Oct. 25, 1980, 1343 U.N.T.S. 89. The United States and Mexico are both signatories

to the Convention.[2] ICARA is the implementing legislation for the Convention. 22 U.S.C. §§ 9001–11; *Abbott v. Abbott*, 560 U.S. 1, 9 (2010). The Convention and ICARA empower federal courts in the United States to order the return of children removed or retained in violation of the Convention. 22 U.S.C. § 9001(b)(4); *Abbott*, 560 U.S. at 9. Importantly, neither the Convention nor ICARA authorize courts to determine the merits of the underlying custody dispute. *Smith v. Smith*, 976 F.3d 558, 561–62 (5th Cir. 2020). Instead, "[t]he return remedy 'was designed to restore the pre-abduction status quo.'" *Soto v. Garcia*, No. 3:22-CV-0118-B, 2022 WL 780701, at *6 (N.D. Tex. Mar. 15, 2022) (citation omitted). "The Hague Convention reasons that the best interest of the child is well served when decisions regarding custody rights are made in the country of habitual residence." *Esparza v. Nares*, No. 4:22-CV-03889, 2022 WL 17724414, at *2 (S.D. Tex. Dec. 15, 2022). Thus, here, "our inquiry is limited to determining whether or not the child has been wrongfully removed from their country of 'habitual residence.'" *Delgado v. Osuna*, 837 F.3d 571, 577 (5th Cir. 2016).

***Prima Facie Case***

In a case under the Convention, the petitioner bears the initial burden. The petitioner must establish, by a preponderance of the evidence,[3] that the child has been wrongfully removed or retained within the meaning of the Convention. *Delgado*, 837 F.3d at 577. To show wrongful removal or retention, a petitioner must prove three elements:

> (1) that the respondent removed or retained the child somewhere other than the child's habitual residence; (2) the removal or retention was in breach of the petitioner's rights of custody under the laws of the country of habitual residence;

---

[2] *Status Table*, Convention of 25 October 1980 on the Civil Aspects of International Child Abduction, https://www.hcch.net/en/instruments/conventions/status-table/?cid=24 (last visited Sept. 30, 2024).

[3] "[T]o prove a fact or claim by a preponderance of the evidence, a party must prove that it is more likely than not that his or her version of the facts is true." *Ostos v. Vega*, No. 3:14-CV-3935-L, 2015 WL 3622693, at *15 n.9 (N.D. Tex. June 10, 2015) (citing *Herman & MacLean v. Huddleston*, 459 U.S. 375, 387–88 (1983)).

and (3) the petitioner was exercising those custody rights at the time of removal or retention or would have exercised those rights but for the removal or retention.

*Id.*

**Habitual Residence**

A child's habitual residence is "[t]he place where a child is at home[] at the time of removal or retention." *Monasky v. Taglieri*, 589 U.S. 68, 77 (2020). "'[A] child's habitual residence depends on the totality of the circumstances specific to the case.'" *Smith*, 976 F.3d at 562 (quoting *Monasky*, 589 U.S. at 71). "What makes a child's residence habitual is therefore some degree of integration by the child in a social and family environment" that is "more than transitory." *Monasky*, 589 U.S. at 76–77. Importantly, one parent's unilateral removal of the child from one country cannot establish a new habitual residence for the child. *See Garcia v. Ramsis*, No. 4:21-CV-650-SDJ, 2022 WL 287031, at *4 (E.D. Tex. Jan. 31, 2022) ("Ramsis cannot establish the United States as S.J.G.'s habitual residence by unilaterally removing her to the country, as the relevant time period for the habitual residence determination is the time 'immediately before' removal or retention.").

Here, the court finds that Mexico was A.Y.S.J.'s habitual residence at the time of Respondent's retention. It was established at the hearing that A.Y.S.J. lived with Petitioner in Mexico since he was born in 2009 until the disputed retention by Respondent in July 2022. During that time, A.Y.S.J. lived with Petitioner, his stepfather, and his stepsiblings, and attended school in Mexico. While Respondent argues that the United States became A.Y.S.J.'s habitual residence, (Dkt. #36 at p. 8), the court found, *supra*, that in July 2022, Petitioner consented to A.Y.S.J. visiting Respondent in Texas, but not moving to reside with Respondent permanently in Texas. Thus, Respondent's unilateral retention of A.Y.S.J. was not sufficient to alter A.Y.S.J.'s habitual residence in Mexico. *Garcia*, 2022 WL 287031 at *4. In any event, A.Y.S.J. spent thirteen years

in a community in Mexico, whereas A.Y.S.J. lived in Texas for less than one year at the time of the wrongful retention. Accordingly, the court finds that Petitioner established Mexico as A.Y.S.J.'s habitual residence at the time of Respondent's retention of the child.

### Retention in Breach of Custody Rights

The removal or retention of a child is wrongful where "it is in breach of custody attributed to a person… under the law of the [country] in which the child was habitually resident immediately before the removal or retention," and where, "at the time of removal or retention those [custodial] rights were actually exercised…" Convention, art. 3. "'Rights of custody' are those rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." Convention, art. 5. Courts may take judicial notice of the law of the country of the child's habitual residence without following standard procedures for the proof of foreign law. Convention, art. 14.

Here, the court finds that Petitioner had rights of custody under Mexican law at the time of Respondent's retention. No Party has alleged that any custody agreement or court order regarding the rights of custody to A.Y.S.J. existed at the inception of this case. As such, the court takes judicial notice of the Civil Code of Nuevo Leon, Eighth Title on Parental Custody (Dkt. #19, Exhibit 3). The Civil Code gives each parent rights of custody, stating that "the father and the mother are the holders of parental authority jointly over the daughters and sons." (Dkt. #19, Exhibit D at p. 3). Accordingly, pursuant to Mexican law, Petitioner has established that she had rights of custody to A.Y.S.J. in July 2022 when Respondent retained the child in Texas.

### Exercising Custody Rights at Time of Retention

Having determined that Mexico was A.Y.S.J.'s habitual residence and that Petitioner has rights of custody under Mexican law, the court must now determine whether Petitioner was

exercising the rights of custody at the time of Respondent's retention. "[W]hen a parent has custody rights under the laws of that country, even occasional contact with the child constitutes 'exercise' of those rights.'" *Rodriguez v. Yanez*, 817 F.3d 466, 472 (5th Cir. 2016); *Sealed Appellant v. Sealed Appellee*, 394 F.3d 338, 345 (5th Cir. 2004) "To show failure to exercise custody rights, the removing parent must show the other parent has abandoned the child." *Sealed Appellant*, 394 F.3d at 345.

Here, Petitioner has established that she was exercising custody over A.Y.S.J. at the time of Respondent's retention of the child. Prior to July 2022, A.Y.S.J. lived solely with Petitioner except for occasionally traveling to Texas to visit Respondent. There is no evidence in the record demonstrating that Petitioner abandoned her right of custody at the time of Respondent's retention of A.Y.S.J. or at any other point in these proceedings. As such, Petitioner has established that she was exercising custody over A.Y.S.J. at the time of Respondent's retention of the child.

Accordingly, Petitioner has established a *prima facie* case of wrongful retention by a preponderance of the evidence pursuant to the Convention. The court next addresses Respondent's affirmative defenses.

***Affirmative Defenses***

Even if a petitioner establishes a *prima facie* case, a court may still deny a petition if the respondent proves one of several affirmative defenses to wrongful removal or retention. *Soto v. Contreras*, 880 F.3d 706, 710 (5th Cir. 2018). The affirmative defenses include: 1) the child has become well-settled in their new environment, 2) the petitioner acquiesced in the removal or retention of the child, 3) the child is mature and objects to the return, 4) the return of the child would pose a "grave risk" of physical or psychological harm or otherwise place them in an intolerable situation, and 5) when return would violate the "fundamental principles" relating to the

"protection of human rights and fundamental freedoms" of the returning country. *Gallardo v. Orozco*, 954 F. Supp. 2d 555, 575 (W.D. Tex. 2013). Here, in his Answer, Respondent asserted the first four affirmative defenses (Dkt. #27 at pp. 5–7). However, at the trial, Respondent conceded that he had not established the "grave risk" affirmative defense as articulated in *Galaviz v. Reyes*, 95 F.4th 246 (5th Cir. 2024). Accordingly, the court only addresses the well-settled, acquiescence, and objection of a mature child defenses.

**Well-Settled Defense**

Under the Convention, the "well-settled" defense applies if, "[a]t the time of 'commencement of the proceedings before the judicial or administrative authority of the Contracting State where the child is,' more than one year has passed since the wrongful removal or retention occurred, and the child has become settled in the child's new environment." Convention, art. 12. "The underlying purpose of this defense is to recognize that at some point a child may become so settled in a new environment that return is no longer in the child's best interests." *Hernandez v. Garcia Pena*, 820 F.3d 782, 787 (5th Cir. 2016). A respondent has the burden to prove this defense by a preponderance of the evidence. *Id.* (citing 22 U.S.C. § 9003(e)(2)(B)). In determining whether a child is well-settled in their new environment, courts consider the following factors:

- the child's age;
- the stability and duration of the child's residence in the new environment;
- whether the child attends school or day care consistently;
- whether the child has friends and relatives in the new area;
- the child's participation in community or extracurricular activities;
- the respondent's employment and financial stability; and
- the immigration status of the respondent and child.

*Id.* at 787–88.

Here, with respect to the timing element of the well-settled defense, the court finds that at the time Petitioner filed her Petition in this court, more than one year had passed since Respondent wrongfully retained A.Y.S.J. Specifically, on January 21, 2023, because Respondent had not returned A.Y.S.J., Petitioner traveled to Dallas, Texas and arrived at Respondent's residence in the early morning hours on January 22, 2023. The same day, Petitioner complained of the unlawful retention of A.Y.S.J. to the Mexican Consulate. Accordingly, the court construes January 22, 2023, as the date Respondent wrongfully retained A.Y.S.J. Petitioner filed her Petition on January 23, 2024 (Dkt. #1). As such, at the time of commencement of the proceedings under the Convention, one year and one day had passed since the wrongful retention occurred.

Additionally, the court finds that A.Y.S.J. is well-settled in his new environment. For example, A.Y.S.J. attends middle school and church, and enjoys sports and playing the violin. He lives in an apartment with Respondent and his paternal grandparents. A.Y.S.J. has many aunts, uncles, and cousins nearby with whom he enjoys spending time. While Respondent is not currently residing in the United States legally and A.Y.S.J.'s immigration status is questionable, this "is one relevant factor in a multifactor test." *Hernandez*, 820 F.3d at 788.

Even so, Respondent has not established this defense by a preponderance of the evidence. To hold otherwise would allow Respondent to benefit from his own wrongdoing, i.e., the wrongful retention of A.Y.S.J. *Monasky*, 589 U.S. at 82 ("When all the circumstances are in play, would-be abductors should find it more, not less, difficult to manipulate the reality on the ground, thus impeding them from forging 'artificial jurisdictional links ... with a view to obtaining custody of a child.'"); *Hernandez*, 820 F.3d at 787 ("The term ['settled'] requires 'nothing less than substantial evidence of the child's significant connections to the new country,' and that claims should 'be considered in light of evidence ... concerning the child's contacts with and ties to his or her State

of habitual residence.'") (citation omitted). Accordingly, Respondent has not carried his burden with respect to the well-settled defense.

### Acquiescence Defense

To establish an acquiescence defense, the respondent must show by a preponderance of evidence that the petitioner was not actually exercising custody rights at time of removal or consented to or subsequently acquiesced to the removal or retention. Convention, art. 13. "[A]cquiescence addresses whether the petitioner subsequently agreed to or accepted the removal or retention." *Cartes v. Phillips*, 240 F. Supp. 3d 669, 682 (S.D. Tex. 2017), aff'd, 865 F.3d 277 (5th Cir. 2017). Proof of acquiescence requires "an act or statement with the requisite formality, such as testimony in a judicial proceeding; a convincing written renunciation of rights; or a consistent attitude of acquiescence over a significant period of time." *Gallardo*, 954 F. Supp. 2d at 577 (citation omitted). Notably, "[t]he fact that a petitioner initially allows children to travel, and knows their location and how to contact them, does not necessarily constitute consent to removal or retention under the Convention." *Cartes*, 240 F. Supp. 3d at 682–83 (citation omitted).

Here, the court finds that Petitioner did not acquiesce to Respondent's retention of A.Y.S.J. There is no evidence in the record that Petitioner testified or agreed in writing to renunciate her right of custody to A.Y.S.J., nor has Respondent shown a "consistent attitude of acquiescence over a significant period of time." Instead, the record reflects that Petitioner agreed to allow A.Y.S.J. to visit for a vacation and to receive medical care but did not intend to allow A.Y.S.J. to move to Texas. For example, on July 14, 2022, Petitioner communicated to Respondent via text that A.Y.S.J. "comes back from vacation on August 29, 2022," and that "[t]hose are the same agreements as always" with respect to A.Y.S.J.'s travel to visit Respondent. Moreover, after Respondent took possession of A.Y.S.J., on August 16, 2022, Petitioner communicated to

Respondent via text that A.Y.S.J. "has to come back on the date that we agreed," and that she would "go get [A.Y.S.J.]. . . [o]n the 3rd of September" if necessary. On September 6, 2022, Petitioner stated that she "hope[d] [Respondent would provide her] an approximate date when [A.Y.S.J. was] coming back so [she could] tell the director." On November 14, 2022, Petitioner reiterated that she intended to travel to the United States to retrieve A.Y.S.J. if necessary. On January 21, 2023, Petitioner did in fact travel to Texas to attempt to retrieve A.Y.S.J. As such, Respondent has not demonstrated that Petitioner acquiesced to Respondent's retention of A.Y.S.J.

### Mature Child Defense

Under the Convention, a court may "refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of its views." Convention, art. 13. Analysis of the mature child defense is therefore a two-step process: first, the court must determine whether the child is of sufficient age and maturity for his views to be considered, and second, the court must evaluate the nature of the objection and determine whether it is a particularized objection or merely a general preference. *Quintero v. De Loera Barba*, No. CV 5:19-148, 2019 WL 1386556, at *5 (W.D. Tex. Mar. 27, 2019) (citing *Rodriguez*, 817 F.3d at 474); *Zaoral v. Meza*, No. CV H-20-1700, 2020 WL 5036521, at *14 (S.D. Tex. Aug. 26, 2020) ("The mature child exception therefore has two elements."). Respondent must prove each element of the mature child defense by a preponderance of the evidence. 22 U.S.C. § 9003. As with each affirmative defense under the Convention, the "exception is to be applied narrowly." *England v. England*, 234 F.3d 268, 272 (5th Cir. 2000).

#### *Maturity of Child*

"'[W]hether a child is of sufficient age and maturity is a fact-intensive process,' and the Fifth Circuit has 'declined to hold, as a matter of law, that any particular age is sufficient [or]

insufficient to meet the defense.'" *Esparza*, 2022 WL 17724414 at *3 (quoting *Dietz v. Dietz*, 349 F. App'x 930, 934 (5th Cir. 2009)). Accordingly, "[t]he Convention does not set an age at which a child is automatically considered to be sufficiently mature, rather the determination is to be made on a case-by-case basis." *Vasconcelos v. Batista*, 512 F. App'x 403, 405 (5th Cir. 2013). "In making its determination, a court must rely on live, oral testimony as well as the demeanor of the witness." *Esparza*, 2022 WL 17724414, at *3 (citing *United States v. Santiago*, 410 F.3d 193, 197 (5th Cir. 2005)). The Fifth Circuit has explained that an *in-camera* interview with the child provides a proper basis for the court's consideration of the age and maturity defense. *Vasconcelos*, 512 F. App'x at 406, n.6 (citing TEX. FAM. CODE § 153.009).

Here, A.Y.S.J. was fourteen-years-old at the time of the trial and fifteen-years-old as of the date of this Opinion. Because the Convention only applies to children under the age of sixteen, A.Y.S.J. will soon be beyond the reach of the Convention. Convention, art. 4. Moreover, based on the *guardian ad litem* report (Dkt. #43, Sealed), the *in-camera* interview, and the testimony presented at the hearing, the court finds that A.Y.S.J. has "attained an age and degree of maturity at which it is appropriate to take account of [his] views."

In her report, the *guardian ad litem* ("GAL") noted that A.Y.S.J. was appropriately dressed and appeared comfortable speaking with her (Dkt. #43 at p. 1, Sealed). The GAL and A.Y.S.J. discussed playing music, sports, his friends at school, and the English as a Second Language Program (Dkt. #43 at pp. 1–2, Sealed). With respect to his family, A.Y.S.J. communicated that he often felt lonely when he lived in Mexico, but in Texas, he lived with his father and grandparents and saw his aunts, uncles, and cousins often (Dkt. #43 at p. 2, Sealed). The GAL also noted that "A.Y.S.J. appeared thoughtful, forthcoming, and conversational in his answers" and that he was "a polite, convivial, and enthusiastic young person." (Dkt. #43 at p. 3, Sealed). A.Y.S.J.

communicated that he wanted to live in the United States because he liked school better in Texas and "is very interested in pursuing his education." (Dkt. #43 at p. 3. Sealed). A.Y.S.J. also communicated that he believed the laws and general security are better in the United States (Dkt. #43 at p. 3, Sealed). The GAL concluded "that A.Y.S.J. has attained a degree of maturity at which it is appropriate for the Court to take account of his views." (Dkt. #43 at p. 3, Sealed).

On May 13, 2024, the court conducted an *in-camera* interview of A.Y.S.J. (Dkt. #47, Sealed). A.Y.S.J. communicated that he knew he was talking to a judge because of the legal problems with his parents (Dkt. #47 at p. 3, Sealed). A.Y.S.J. described his current daily schedule in Texas as well as his previous schedule in Mexico (Dkt. #47 at pp. 10–13, Sealed). A.Y.S.J. stated that he wanted to move to Texas prior to his arrival in July 2022 (Dkt. #47 at p. 17, Sealed). A.Y.S.J. communicated that living in Mexico made him stressed, anxious, and scared (Dkt. #47 at p. 18, Sealed). Conversely, A.Y.S.J. stated that the thought of staying in Texas made him feel comfortable, peaceful, and happy (Dkt. #47 at p. 22, Sealed). A.Y.S.J. discussed his medical problems and the treatments he was receiving in the United States (Dkt. #47 at pp. 20–21, Sealed). When asked if anyone pressured A.Y.S.J. to say that he wanted to stay in Texas, he responded that his father stated that it was A.Y.S.J.'s decision and that his father wanted him to reside where A.Y.S.J. wanted to reside and was comfortable (Dkt. #47 at p. 24, Sealed). A.Y.S.J. stated that his mother never asked him where he would like to reside (Dkt. #47 at p. 24, Sealed). Because A.Y.S.J. is fifteen years old, answered the court and the GAL's questions truthfully and thoughtfully, and generally exhibited qualities of a well-rounded, mature young person, the court finds that A.Y.S.J. is of a sufficient age and maturity such that his objection should be considered. *See, e.g.*, *Rodriguez*, 817 F.3d at 478 (upholding maturity determination for eleven-year-old child based on *in camera* interview); *Vasconcelos*, 512 F. App'x at 406 (upholding maturity determination for

thirteen-year-old child based on *in camera* interview and GAL report); *Ariza v. Ash*, No. CV 22-1053, 2022 WL 3328888, at *6 (W.D. La. Aug. 11, 2022) (upholding maturity determination for ten-year-old child based on *in camera* interview).

### *Child's Objection*

Having determined that A.Y.S.J. is of sufficient age and maturity, the court must now determine whether A.Y.S.J. objected to returning to Mexico. The child must affirmatively object, not just express a preference. *See Rodriguez*, 817 F.3d at 477 ("There is a substantive difference between preferring to live in one of two countries—when living in either country would be acceptable—and affirmatively objecting to returning to one country—when living in that country would be unacceptable. Only an objection is sufficient to trump the Convention's strong presumption in favor of return."); *Vasconcelos*, 512 F. App'x at 408 ("B.V. has not expressed a mere generalized desire or preference to stay in the United States. During her in camera interview with the magistrate judge, . . .she specifically expressed that she did not want to visit her father while he was in the United States. She also 'demonstrated an understanding of the proceedings and of her right to state her preferences.'"); *Carlson v. Carlson*, 651 F. Supp. 3d 516, 522 (D.R.I. 2023) ("Today, and while this proceeding has been ongoing, E.C.'s desire to remain in the United States is assertive, unequivocal, and consistent. Indeed, it was so strong that he broke down at Logan Airport at the prospect of returning to Germany and would not board the plane."). Even so, the "child's objection should be ignored if the court believes the abducting parent has exercised 'undue influence over the child.'" *Rodriguez*, 817 F.3d at 476 (citation omitted).

Here, the court finds that A.Y.S.J. objected to returning to Mexico. In his interview with the GAL, A.Y.S.J. articulated several reasons why he desired to stay in the United States, including that the school is better, and his education is important to him, and that the laws and general

security are better in the United States (Dkt. #43 at p. 3, Sealed). A.Y.S.J. also communicated that he often felt "lonely" in Mexico, while in the United States, he is surrounded by family who care about his well-being (Dkt. #43 at p. 2, Sealed).

During the *in-camera* interview, A.Y.S.J. communicated that living in Mexico made him feel stressed, anxious, and scared (Dkt. #47 at p. 18, Sealed). A.Y.S.J. also stated that the thought of staying in Texas made him feel comfortable, peaceful, and happy (Dkt. #47 at p. 22, Sealed). A.Y.S.J. further communicated that he wanted to move to Texas before arriving in July 2022 because "I wanted to go to school[,] and I didn't want to live in Mexico anymore." (Dkt. #47 at p. 17, Sealed). When asked why he did not want to return to Mexico now, A.Y.S.J. stated that he did not want to live in Mexico because it was not safe and that he did not wish to live with Petitioner anymore (Dkt. #47 at p. 19, Sealed). Throughout the proceedings, A.Y.S.J. never waivered on his opinion or withdrew his objection to returning to Mexico. Accordingly, the court finds that A.Y.S.J. objected to being returned to Mexico.

Furthermore, there is no evidence that either parent unduly influenced A.Y.S.J. Both the court and the GAL found A.Y.S.J.'s testimony to be credible. Additionally, when asked if anyone pressured A.Y.S.J. to say that he wanted to stay in Texas, A.Y.S.J. responded that Respondent stated that it was A.Y.S.J.'s decision (Dkt. #47 at p. 24, Sealed). A.Y.S.J. stated that his mother never asked him where he would like to stay (Dkt. #47 at p. 24, Sealed). As such, the court finds that A.Y.S.J. objected to being returned to Mexico, and that he is of a suitable age and maturity level that the objection should be considered. The court further finds that A.Y.S.J.'s objection was not a product of undue influence. Respondent has therefore carried his burden with respect to the mature child defense, and the court declines to order that A.Y.S.J. be returned to Mexico.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Petitioner Nidia DelCarmen Juarez De La Rosa's Amended Verified Petition for Return of Child to Petitioner and Petition for Immediate Issuance of Show Cause Order to Respondent (Dkt. #19) is **DENIED**.

It is further **ORDERED** that Respondent shall submit any motion for costs and fees, within twenty-one (21) days after entry of final judgment. *See* 22 U.S.C. § 9007(b)(3). Any response shall be supported by applicable authority and filed, if at all, within fourteen (14) days of Respondent's motion.

**IT IS SO ORDERED.**

**SIGNED this 30th day of October, 2024.**

*[signature]*

AILEEN GOLDMAN DURRETT
UNITED STATES MAGISTRATE JUDGE